NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180683-U

NO. 4-18-0683

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

Rule 23 filed November 17, 2020

Modified upon denial of Rehearing December 23, 2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| CLARANCE ANTHONY THOMPKINS, | ) | No. 10CF1138 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding postconviction counsel complied with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), thus rendering reasonable assistance of counsel.

¶ 2        In September 2017, defendant, Clarance Anthony Thompkins, filed a *pro se* petition for leave to file a successive postconviction petition asserting two primary bases for postconviction relief: (1) newly discovered evidence of actual innocence and (2) ineffective assistance of trial counsel. The trial court denied defendant's motion finding, in relevant part, defendant failed to attach to his petition the affidavit necessary to support his actual innocence claim.

¶ 3        In October 2017, defendant filed a *pro se* petition for rehearing, including the missing affidavit to support his actual innocence claim. Subsequently, the trial court advanced defendant's petition to second-stage proceedings and appointed counsel to represent defendant.

¶ 4        In May 2018, appointed counsel filed an amended successive postconviction petition pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2016)), raising only defendant's actual innocence claim.  Appointed counsel also filed a Rule 651(c) certificate.  Ill. S. Ct. R. 651(c) (eff. July 1, 2017).  The State filed an answer, and the amended petition proceeded to an October 2018 evidentiary hearing.  After hearing the evidence relevant to the claim in defendant's amended petition, the trial court denied the postconviction petition.

¶ 5        On appeal, defendant argues he was denied reasonable assistance of postconviction counsel, where counsel failed to comply with the duties set out in Rule 651(c). On November 17, 2020, we filed a Rule 23 order affirming the trial court's judgment.  On December 7, 2020, defendant filed a petition for rehearing, alleging this court found postconviction counsel's review of the record pursuant to Rule 651(c) included review of a document not in the record at the time counsel filed her Rule 651(c) certificate.  Defendant asks this court to address the chronology of filings, which show a lack of Rule 651(c) compliance. We deny defendant's petition for rehearing, and we affirm the judgment.

¶ 6                                I. BACKGROUND

¶ 7                           A. Trial Court Proceedings

¶ 8        In December 2010, the State charged defendant with home invasion while armed with a firearm (720 ILCS 5/12-11(a)(3) (West 2008)) and armed robbery (720 ILCS 5/18-2(a)(2) (West 2008)).  The charges stemmed from a July 29, 2008, incident at the residence of Richard J. and Barbara S. Hopper.

¶ 9         Along with codefendant James Manuel, who the State indicted separately on the aforementioned charges, defendant's case proceeded to a bench trial in September 2011.  We summarize only the evidence necessary for disposition of this appeal.

¶ 10        On the night of July 29, 2008, two masked men broke into the Hopper residence at 4 Carleton Court in Bloomington, Illinois.  While one offender detained the Hoppers, the other raided Richard's gun collection.  Richard testified that upon entry into the house, one man went directly into the room where he kept his guns and put the guns in a duffel bag.  Both Barbara and Richard testified that in addition to displaying guns, the men wore black clothing with hoods and surgical masks.  After the one man placed the guns into the duffel bag, the two men left, and Barbara called 911.

¶ 11        Barbara testified the couple moved into the house on Carleton Court in February 2008.  The Hoppers hired North American Van Lines to assist in the move.  Barbara noticed the man who filled the duffel bag with the guns had the same stature as one of the men who helped move them into their home.  Barbara stated, "we hadn't had anybody else in our house that had that same statute [*sic*]."

¶ 12        Richard testified one of the men had a tattoo on his right forearm that "looked like two worms crisscrossing."  When shown defendant's and Manuel's arms, Richard testified he did not recognize anything on either one of those individuals.

¶ 13        The State introduced an inventory created by Richard and his son listing 21 guns stolen on July 29, 2008.

¶ 14        Daniel Diciaula testified he currently had three federal charges pending against him: (1) drug trafficking with a firearm, (2) possession of a firearm by a felon, and (3) possession of cannabis.  Diciaula agreed to testify in the instant case pursuant to a proffer

with federal authorities. During a March 2010 search of Diciaula's residence, federal authorities found one of the guns from Richard's collection. Diciaula purchased the gun from codefendant Manuel.

¶ 15 Megan Bachman, Manuel's girlfriend, identified defendant and Manuel in open court. Bachman testified she had known defendant for six years. Bachman recalled she told police officers she observed defendant bring a long, hunter green duffel bag into her house. Defendant and Manuel took the duffel bag downstairs. Bachman then observed defendant leave with the bag. Bachman testified she saw Manuel and defendant with guns.

¶ 16 Jaclyn Hinrichsen, an agent for North American Van Lines, testified she kept the records for the company, including the records on the Hopper move. Hinrichsen searched the company records and confirmed defendant worked the day the Hoppers moved and assisted with that move.

¶ 17 In September 2008, police officers arrested defendant in a different case and found defendant carrying a gun from Richard's collection. Also in September 2008, Gregory Patton, a school mentor to defendant, took multiple recovered guns to the Bloomington Police Department. Patton received the guns from defendant's mother, who testified she found them under her garage.

¶ 18 At the close of evidence, the trial court found defendant guilty on both counts. In November 2011, the court sentenced defendant to 30 years in the Illinois Department of Corrections on each count, to run concurrently, plus a 15-year add-on due to the use of the firearms in the commission of the offenses, for a total of 45 years in prison.

¶ 19 On direct appeal, defendant argued (1) the State did not present sufficient evidence of his guilt, (2) the trial court erred in admitting testimony about statements his mother

made, and (3) the 15-year firearm enhancement for armed robbery (720 ILCS 5/18-2(b) (West 2010)) was void. In July 2013, this court affirmed defendant's conviction and sentence. *People v. Thompkins*, 2013 IL App (4th) 120018-U.

¶ 20                                    B. Postconviction Proceedings

¶ 21        In June 2014, defendant filed a *pro se* postconviction petition alleging various claims of ineffective assistance of trial and appellate counsel. In August 2014, the trial court summarily dismissed defendant's postconviction petition as frivolous and patently without merit. In November 2016, this court affirmed the trial court's dismissal of defendant's postconviction petition. *People v. Thompkins*, 2016 IL App (4th) 140763-U.

¶ 22        In June 2017, defendant filed a *pro se* petition for leave to file a successive postconviction petition, "asserting his right to effective assistance of counsel, and his right to due process, were violated when his postconviction appellate counsel failed to raise many viable issues that petitioner relied on him to argue on appeal, and that the record is devoid of any indication that counsel substantially complied with Illinois Supreme Court Rule 651(c)." Subsequently, the trial court denied defendant's petition.

¶ 23        In September 2017, defendant filed a second *pro se* petition for leave to file a successive postconviction petition claiming two primary justifications for postconviction relief: (1) newly discovered evidence of actual innocence and (2) ineffective assistance of trial counsel. As to the actual innocence claim, defendant referenced an attached affidavit showing newly discovered eyewitness testimony. Further, defendant alleged "false testimony by prosecution witness Daniel Diciaula" where Diciaula lied about having only three charges pending, when "the docket sheet" showed Diciaula had 12 felony charges pending.

¶ 24    The trial court denied defendant's motion, finding defendant represented he attached an affidavit to his petition to support his actual innocence claim but failed to attach the affidavit. Regarding defendant's claim Diciaula provided false testimony, the court was "most certain" defendant did not attach to his petition any document substantiating the allegation. Rather, defendant's claim was "merely conclusory in nature and nothing more than a bald conclusion." As to defendant's ineffective assistance of trial counsel claim, the court stated,

> "The first of these claims could have been raised in one of [p]etitioner's prior postconviction petitions. The petitioner has failed to demonstrate why waiver does not apply. As clearly stated in 725 ILCS 5/122-3, '[A]ny claim of substantial denial of constitutional rights not raised in the original or an amended petitioner is waived.'
>
> The second claim was unsuccessfully raised within petitioner's original postconviction petition and, pursuant to the doctrine of *res judicata*, may not be relitigated again."

¶ 25    In October 2017, defendant filed a *pro se* petition for rehearing and attached the missing affidavit to support his actual innocence claim. The affidavit provided declarations from Keith Bland, who claimed he witnessed the aftermath of the July 29, 2008, home invasion and armed robbery. On the night of July 29, 2008, Bland and a woman were parked in a vehicle on Carleton Court in Bloomington when he saw two men rushing out of 4 Carleton Court. He observed the two men remove black hoodies, masks, and gloves, and then throw a duffel bag into a vehicle before driving off. Bland recognized the "very light complexioned black" male as O'Shea Wells. Bland identified Wells as the head of a gang and alleged Wells previously tried

to set Bland up for a gun crime. Following rehearing, the trial court advanced defendant's petition to second-stage proceedings and appointed counsel to represent defendant.

¶ 26 In May 2018, appointed counsel filed an amended successive postconviction petition, raising only defendant's actual innocence claim. Appointed counsel also filed a Rule 651(c) certificate. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Pursuant to Rule 651(c), counsel certified the following:

> "1) She has consulted with the Defendant-Petitioner, either by
> phone, mail, electronic means, or in person to ascertain
> Defendant-Petitioner's contentions of deprivation of Constitutional
> right and has examined the record of proceedings at trial;
>
> a. Spoke with Petitioner in person on November 20, 2018
> [*sic*], January 24, 2018, and March 26, 2018;
>
> b. Letter to Petitioner on November 6, 2017;
>
> c. Letters from Petitioner on or about February 26, 2018,
> March 4, 2018; and
>
> d. Spoke with Petitioner via telephone conference on
> March 15, 2018[,] and May 7, 2018.
>
> 2) She has made amendments to the *pro se* [p]etition necessary for
> adequate presentation of Mr. Thompkins' proceedings."

In July 2018, the State filed an answer.

¶ 27 In August 2018, defendant's mother, son, and former employer sent letters to the trial court in support of defendant. Defendant's mother attached to her letter an online docket sheet from the McLean County circuit court showing a case against Diciaula, listing six charges

- 7 -

twice, once as "Dismiss/Superseded by Indictment or Information" and once as "*Nolle Prosequi*" for a total of 12 charges.

¶ 28     In October 2018, the trial court held an evidentiary hearing on defendant's amended successive postconviction petition. At the hearing, Bland, an inmate at Pinckneyville Correctional Facility, testified he responded to a notice on the facility's gym bulletin board asking people to come forward if they had information about a home invasion that occurred in Bloomington. The address of the incident provided on the notice caught Bland's attention. Bland testified he did not know defendant.

¶ 29     On the night of July 29, 2008, Bland and a woman were having intercourse in a parked vehicle on Carleton Court when he witnessed "[t]wo men coming from out of the house." Bland noticed one of the men "was black and the other was like mixed[,]" meaning "a light complexion, very light complexion." Bland testified the men wore black hoodies, doctor masks, and black gloves. Bland observed the "lighter-skinned" male with a gym bag. Bland recognized one of the individuals as O'Shea Wells, whom he had a previous altercation with in Chicago, Illinois. Bland testified he did not know Wells's name but rather the woman he was with told him Wells's name. On cross-examination, the State called into question some inconsistencies between Bland's affidavit and his testimony on direct examination. Subsequently, the State introduced a certified prison record for O'Shea Wells, showing he was incarcerated on July 29, 2008.

¶ 30     After hearing the evidence, the trial court denied the amended postconviction petition. In support of its decision, the court stated,

"I don't know how else to say this in finding that the
testimony of Mr. Bland is not worthy of any belief and is totally

unbelievable other than to have a reviewing court be aware that the trier of fact, and I am responsible for assessing and determining what weight and credibility to give to Mr. Bland and I will indicate, how did I know when Mr. Bland was lying? His lips were moving. No justification at all for his testimony as being worthy of any belief, and so this—this petition is denied."

¶ 31 This appeal followed.

¶ 32                                    II. ANALYSIS

¶ 33 On appeal, defendant argues he was denied reasonable assistance of postconviction counsel, where counsel failed to comply with the duties set out in Rule 651(c). The State maintains postconviction counsel provided defendant with reasonable assistance. We affirm.

¶ 34 The right to counsel in postconviction proceedings is wholly statutory, and petitioners are only entitled to the level of assistance provided for in the Act. *People v. Suarez*, 224 Ill. 2d 37, 42, 862 N.E.2d 977, 979 (2007) (citing *People v. Turner*, 187 Ill. 2d 406, 410, 719 N.E.2d 725, 727-28 (1999)). "The Act provides for a reasonable level of assistance." *Id.* (citing *People v. Flores*, 153 Ill. 2d 264, 276, 606 N.E.2d 1078, 1084 (1992)).

¶ 35 In order to assure a reasonable level of assistance, Rule 651(c) requires that postconviction counsel (1) consult with petitioner by phone, mail, electronic means, or in person to ascertain his or her contentions of deprivation of constitutional rights, (2) examine the record of the proceedings at the trial, and (3) make any amendments necessary to the *pro se* petition to adequately present petitioner's contentions. Our supreme court has consistently held remand is required when postconviction counsel fails to complete any one of the above duties, regardless of

whether the claims raised in the petition have merit. *Suarez*, 224 Ill. 2d at 47. Additionally, "[f]ulfillment of the third obligation does not require counsel to advance frivolous or spurious claims on defendant's behalf." *People v. Pendleton*, 223 Ill. 2d 458, 472, 861 N.E.2d 999, 1007 (2006); *People v. Greer*, 212 Ill. 2d 192, 205, 817 N.E.2d 511, 519 (2004).

¶ 36    Here, appointed counsel filed a certificate pursuant to Rule 651(c). "The filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that counsel acted reasonably and complied with the rule." *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 25, 67 N.E.3d 976. Where the certificate filed is facially valid, "[i]t is defendant's burden to overcome this presumption ***." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19, 974 N.E.2d 813. On appeal, we review an attorney's compliance with Rule 651(c) *de novo*. *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 15, 43 N.E.3d 1077.

¶ 37    Defendant argues that where postconviction counsel filed a Rule 651(c) certificate that failed to track, verbatim, the language within Rule 651(c), the certificate is facially invalid and we should decline to afford any presumption that counsel acted reasonably and complied with the rule. In addition, defendant asserts the record rebuts the presumption because it shows postconviction counsel failed to comply with the duties set forth in Rule 651(c). Specifically, defendant argues the record failed to show counsel (1) conducted an adequate consultation with defendant where counsel only consulted with defendant regarding the "deprivation of a Constitutional right[,]" (2) conducted an adequate examination of the record of proceedings at trial where counsel's Rule 651(c) certificate did not indicate she reviewed the docket in Diciaula's case, and (3) made necessary amendments to defendant's petition where counsel only addressed defendant's claim of actual innocence.

¶ 38    While counsel's certificate failed to track, verbatim, the language in 651(c), we decline to find the certificate facially invalid. Thus, we afford the presumption raised by the filing of a facially valid certificate. Moreover, we find the record illustrates postconviction counsel complied with Rule 651(c) by providing adequate and reasonable representation.

¶ 39    Upon review of the amended petition, postconviction counsel provided reasonable representation where counsel asserted she "reviewed the record, researched all potential issues, and hereby amends the [*p*]ro [*s*]e [p]ost[]conviction [p]etition as follows[.]" Counsel advanced only defendant's claim of actual innocence in the amended petition. See *People v. McNeal*, 194 Ill. 2d 135, 140, 742 N.E.2d 269, 272 (2000) (The issues raised on postconviction review are limited to those that could not or were not previously raised on direct appeal or in prior postconviction proceedings.); *People v. Rissley*, 206 Ill. 2d 403, 412, 795 N.E.2d 174, 179 (2003) (Issues that could have been raised on direct appeal but were not are procedurally defaulted.).

¶ 40    Further, counsel filed a Rule 651(c) certificate asserting she (1) consulted with defendant on multiple occasions to ascertain defendant's "contentions of a deprivation of [a] [c]onstitutional right[,]" (2) examined the record of proceedings at trial, and (3) "made amendments to the *pro se* [p]etition necessary for adequate presentation of Mr. Thompkins' proceedings."

¶ 41    Defendant argues Rule 651(c) requires counsel to communicate with the petitioner "to ascertain his or her contention of deprivation of constitutional rights[.]" See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Here, defendant contends counsel's averment indicates consultation concerning one right, not the panoply of constitutional rights that can be raised under the postconviction statute. Defendant's allegation stems from counsel's wording in the

- 11 -

Rule 651(c) certificate where counsel stated she consulted with defendant on multiple occasions to ascertain defendant's "contentions of a deprivation of [a] [c]onstitutional right[.]"

¶ 42    Based on the record, we find postconviction counsel communicated with defendant on multiple occasions to ascertain his contention of deprivation of his constitutional rights. Specifically, counsel listed multiple dates of communication and asserted she "researched all potential issues." We do not find counsel's wording in the Rule 651(c) certificate—stating "constitutional right" versus "constitutional rights"—amounts to noncompliance with the rule.

¶ 43    Defendant next argues the record does not show counsel complied with Rule 651(c) where counsel's certificate did not indicate she reviewed the docket in Diciaula's case. In his petition for rehearing, defendant asserts that while the record contains Diciaula's docket sheet now, it did not contain the document at the time of counsel's averments. Counsel filed a Rule 651(c) certificate on May 18, 2018. Diciaula's docket sheet, however, only became a part of the record months later, on August 3, 2018, when defendant's mother attached the docket sheet to a letter she sent to the judge presiding over the case. Thus, the petition for rehearing correctly points out the docket sheet was not part of the record at the time counsel filed her Rule 651(c) certificate.

¶ 44    However, as previously noted, "[t]he filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that counsel acted reasonably and complied with the rule." *Wallace*, 2016 IL App (1st) 142758, ¶ 25. In his September 2017 successive petition, defendant alleged witness Diciaula offered false testimony. Specifically, defendant asserted Diciaula testified to three pending charges when he really had twelve pending charges.

¶ 45    In the September 2017 petition, defendant referenced Diciaula's "twelve (12) felony charges evidenced by the docket sheet." We know from counsel's certificate that not only

did counsel consult with defendant to ascertain his contentions of the deprivation of his constitutional rights, but counsel also made amendments to the *pro se* petition necessary to present defendant's claims. Thus, we presume counsel knew about and considered this claim. Moreover, counsel is not required "to advance frivolous or spurious claims on defendant's behalf." *Greer*, 212 Ill. 2d at 205. Ultimately, the docket sheet which shows the State decided to dismiss or *nolle prosequi* all charges against Diciaula offers no support to defendant's claim alleging Diciaula misrepresented the extent of his pending charges.

¶ 46 Finally, defendant argues the record does not show counsel made necessary amendments to defendant's petition where counsel only addressed defendant's claim of actual innocence. Defendant points out counsel's certificate states amendments were made to ensure adequate presentation of defendant's proceedings, not contentions. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 47 Postconviction counsel was under no obligation to include all of defendant's allegations in his amended petition. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017) (Postconviction counsel is not required to raise every argument made by defendant but rather provide reasonable representation by making necessary amendments that adequately present defendant's contentions.) Counsel is not required to advance frivolous claims on defendant's behalf. See *Pendleton*, 223 Ill. 2d at 472. Here, postconviction counsel advanced only defendant's actual innocence claim where his other claims were previously raised in postconviction proceedings. See *McNeal*, 194 Ill. 2d at 140. Therefore, postconviction counsel amended defendant's petition to include only claims still assertable.

¶ 48 Moreover, under *People v. Kuehner*, 2015 IL 117695, 32 N.E.3d 655, counsel was not required to provide reasoning for each omitted claim in the amended postconviction

- 13 -

petition. *Kuehner* only requires an explanation of claims that lack merit where an attorney is moving to withdraw. *Id.* ¶¶ 15-16. Because counsel was not moving to withdraw, we find postconviction counsel was not required to provide reasoning for each omitted claim.

¶ 49 Where the record illustrates that counsel did comply with the tenants of Rule 651(c), we find counsel rendered reasonable assistance during postconviction proceedings. Even so, we do wish to impress upon counsel the importance of carefully reciting the language contained within Rule 651(c) when filing a certificate. Accordingly, we deny defendant's petition for rehearing, and we affirm the trial court's judgment.

¶ 50 III. CONCLUSION

¶ 51 For the foregoing reasons, we affirm the trial court's judgment.

¶ 52 Affirmed.